1  JAIKARAN SINGH (SBN 201355)
   jsingh@mckennalong.com
2  McKENNA LONG & ALDRIDGE LLP
3  600 West Broadway, Suite 2600
   San Diego, CA 92101-3372
4  Telephone: 619.236.1414
5  Facsimile:  619.232.8311

6
7  Attorneys for Defendant
   NWP Services Corporation, erroneously
8  sued as NWP Services Company

9
10                    UNITED STATES DISTRICT COURT
11                   CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL JUNOD, an individual, on behalf of himself and on behalf of all others similarly situated,<br><br>   Plaintiffs,<br><br>   v.<br><br>NWP SERVICES COMPANY, a California corporation, and DOES 1 through 50,<br><br>   Defendants. | Case No. 8:14-cv-01734 JLS (JCGx)<br><br>**[CLASS ACTION]**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT NWP SERVICES CORPORATION'S MOTION TO DISMISS UNDER RULE 12(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE**<br><br>Judge: Hon. Josephine L. Staton<br>Crtrm.: 10A<br><br>Date: April 3, 2015<br>Time: 2:30 p.m. |

McKenna Long &
Aldridge LLP
San Diego

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

## I. INTRODUCTION

This lawsuit arises from Plaintiff Michael Junod's tenancy at the Chattahoochee Landing Apartments in Roswell, Georgia. Plaintiff asserts an individual and class action claim for violation of California's Unfair Competition Law, Business & Professions Code Section 17200 *et seq.* (the "UCL" statute) against NWP Services Corporation ("NWP"), a third party billing service provider who contracted with the former owner and manager of the Chattahoochee Landing Apartments to send monthly utility statements to tenants, including Plaintiff. The crux of Plaintiff's complaint is that NWP fraudulently billed tenants nationwide for water and sewer not delivered and overcharged for water and sewer at exorbitant rates. Plaintiff's allegations are false and his claim lacks merit. But for purposes of this pleading challenge, the complaint should be dismissed because it fails to allege facts sufficient to state a claim under the UCL against NWP.

The Court previously granted NWP's motion to dismiss Plaintiff's First Amended Complaint. Plaintiff has now filed a Second Amended Complaint ("SAC") that essentially asserts the same allegations as before. But, in an attempt to artificially create standing under the UCL, Plaintiff now alleges (albeit incorrectly) that NWP sent Plaintiff monthly water and sewer statements from California. This sole allegation does not establish Plaintiff's standing under the UCL given the other allegations in the SAC which show that the purported injuries at issue were sustained as a result of NWP's alleged conduct that occurred outside of California.

Plaintiff's first cause of action for violation of the UCL is flawed for another reason. Plaintiff fails to state an "unfair" business practices claim against NWP because he identifies no *applicable* legislatively-declared public policy that NWP violated. Plaintiff's reliance on Public Utilities Code section 451 is grossly misplaced as this provision applies to public utilities, not a private third party billing service provider like NWP. Likewise, Plaintiff has not alleged an "unlawful" business practices claim because he has not alleged that NWP violated some applicable statue or

regulation (not public policy) independent of the UCL.

The deficiencies in Plaintiff's amended complaint are vast and cannot be cured through creative pleading. Accordingly, the Court should grant NWP's motion to dismiss in its entirety with prejudice.

## II. SUMMARY OF ALLEGATIONS

"This is a class action arising out of fraudulent billing practices." (SAC, ¶ 1.) Plaintiff is a former tenant of an apartment community in Roswell, Georgia (called the Chattahoochee Landing Apartments), who received monthly statements from NWP for water and sewer. (*Id.* at ¶¶ 2, 9.) Plaintiff is a Georgia resident, who continues to reside in Georgia. (*Id.* at ¶ 19.)

Plaintiff claims that NWP fraudulently billed him and other tenants of apartment communities nationwide by charging tenants for water and sewer services that were not delivered and by overcharging them for water and sewer. (*Id.* at ¶¶ 1, 3-4, 9-10, 19-26, 31.) In particular, Plaintiff contends that he and the other class members received "exorbitantly high water and sewer bills" when they had not substantially changed their customary water and sewer usage. (*Id.* at ¶ 21.) Plaintiff alleges that NWP "billed its customers by the customary practice of reading meters that showed how much water the customer used . . . ." (*Id.* at ¶ 22.)

According to Plaintiff, NWP violated the UCL by improperly reading meters that were located "at or near" the apartment community in calculating the monthly water and sewer charges. (*Id.* at ¶¶ 14, 22, 23.) Specifically, Plaintiff contends that NWP "provided inaccurate and inflated meter readings, reporting higher than actual water use." (*Id.* at ¶ 23.) Likewise, Plaintiff also claims that NWP "would report water use that was up to triple the habitual and actual use by its customers." (*Ibid.*)

Plaintiff alleges that NWP, based on its inaccurate and inflated meter readings, then sent water and sewer bills to tenants from California. (*Id.* at ¶¶ 22, 27; Exhibit 1.) Plaintiff and the other tenants were injured when they paid excessive water and sewer

McKenna Long &
Aldridge LLP
San Diego

2
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

regulation (not public policy) independent of the UCL.

The deficiencies in Plaintiff's amended complaint are vast and cannot be cured through creative pleading. Accordingly, the Court should grant NWP's motion to dismiss in its entirety with prejudice.

## II. SUMMARY OF ALLEGATIONS

"This is a class action arising out of fraudulent billing practices." (SAC, ¶ 1.) Plaintiff is a former tenant of an apartment community in Roswell, Georgia (called the Chattahoochee Landing Apartments), who received monthly statements from NWP for water and sewer. (*Id.* at ¶¶ 2, 9.) Plaintiff is a Georgia resident, who continues to reside in Georgia. (*Id.* at ¶ 19.)

Plaintiff claims that NWP fraudulently billed him and other tenants of apartment communities nationwide by charging tenants for water and sewer services that were not delivered and by overcharging them for water and sewer. (*Id.* at ¶¶ 1, 3-4, 9-10, 19-26, 31.) In particular, Plaintiff contends that he and the other class members received "exorbitantly high water and sewer bills" when they had not substantially changed their customary water and sewer usage. (*Id.* at ¶ 21.) Plaintiff alleges that NWP "billed its customers by the customary practice of reading meters that showed how much water the customer used . . . ." (*Id.* at ¶ 22.)

According to Plaintiff, NWP violated the UCL by improperly reading meters that were located "at or near" the apartment community in calculating the monthly water and sewer charges. (*Id.* at ¶¶ 14, 22, 23.) Specifically, Plaintiff contends that NWP "provided inaccurate and inflated meter readings, reporting higher than actual water use." (*Id.* at ¶ 23.) Likewise, Plaintiff also claims that NWP "would report water use that was up to triple the habitual and actual use by its customers." (*Ibid.*)

Plaintiff alleges that NWP, based on its inaccurate and inflated meter readings, then sent water and sewer bills to tenants from California. (*Id.* at ¶¶ 22, 27; Exhibit 1.) Plaintiff and the other tenants were injured when they paid excessive water and sewer

1 charges while living at their respective apartment communities nationwide. (*Id.* at ¶¶ 19-26.)

### III. STANDARD OF REVIEW

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a claim. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A complaint is properly dismissed where either: (1) it lacks a cognizable legal theory for recovery; or (2) the plaintiff alleges insufficient facts to support a cognizable legal theory. *Balistreri v. Pacific Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990).

Generally, in analyzing a motion to dismiss, the court must accept as true all material allegations in the complaint and construe them in the light most favorable to the non-moving party. *NL Industries, Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). However, the court need not accept as true unreasonable inferences, unwarranted deductions of fact, or conclusory legal allegations cast in the form of factual allegations. *Western Mining Counsel v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981); *Holden v. Hagopian*, 978 F.2d 1115, 1121 (9th Cir. 1992). Factual allegations in the complaint may be disregarded if contradicted by documents to which the court may properly refer. *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987).

Federal Rule of Civil Procedure 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The Supreme Court has elaborated that, although Rule 8 does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Indeed, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court expressly overruled the *Conley v. Gibson*, 355 U.S. 41, 45-6 (1957), standard that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 550 U.S. 554, 563 (2007)

("this famous observation has earned its retirement"). After *Twombly* and *Iqbal*, a complaint must state more than "naked assertions devoid of 'further factual enhancement'" to survive a motion to dismiss. *See Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557).

In interpreting Rule 8, the Supreme Court emphasized that "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 129 S. Ct. at 1949. Whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950. In this "context-specific" exercise, courts are not bound to accept as true a legal conclusion couched as fact. *Twombly*, 550 U.S. at 555; *see also Iqbal*, 129 S. Ct. at 1950 (Legal conclusions are "not entitled to the assumption of truth."). *Twombly* and *Iqbal* make clear that the description "legal conclusions" not only encompasses statements of law, but also bottom-line allegations. In sum, on a 12(b)(6) motion to dismiss, these types of statements should be set aside and then, assuming the veracity of any pleaded factual allegations, the Court should "determine whether they ***plausibly*** give rise to an entitlement to relief." *Iqbal*, 129 S.Ct. at 1950 (emphasis added).

The rigorous application of the *Twombly/Iqbal* standard is particularly appropriate in this case since Plaintiff's complaint is largely comprised of factually devoid legal conclusions.

## IV. PLAINTIFF FAILS TO STATE A UCL CLAIM AGAINST NWP

Plaintiff asserts a UCL claim based on the "unfair" and "unlawful" prongs of the statute. A preliminary problem with Plaintiff's UCL claim is that as a non-California resident, he lacks standing to sue under the UCL for purported injuries sustained as a result of NWP's alleged conduct that occurred outside of California. More substantively, as discussed below, Plaintiff's allegations are also insufficient to state a claim against NWP for violation of the UCL under the "unfair" and "unlawful" prongs

of the statute.

### A. Plaintiff Lacks Standing to Assert a UCL Claim

California courts have held for some time that non-California residents do not have standing to sue under the UCL for injuries sustained as a result of a defendant's conduct that occurred outside of California. *See Northwest Mortgage, Inc. v. Superior Court*, 72 Cal.App.4th 214, 222 (1999); *Mazza v. American Honda Motor Co., Inc.* 666 F.3d 581, 594 (9th Cir. 2012) (Section 17200 does not apply to out-of-state purchasers of vehicles where "the last events necessary for liability as to the foreign class members . . . took place in the various foreign states, not in California."); *Arabian v. Sony Electronics, Inc.*, 2007 WL 62977, at *9 (S.D. Cal. 2007) ("There is a presumption against California law being given extraterritorial effect when the wrongful act as well as the injury occurred outside California."); *see also Zarrella v. Pacific Life Ins. Co.* 755 F.Supp.2d 1218, 1230 (S.D. FL. 2010) (Florida residents cannot sue California-based company under UCL where alleged wrongful acts occurred in Florida).

In this case, Plaintiff, as an out-of-state resident from Georgia, cannot assert claims under the UCL if his "proposed application of the UCL would cause it to operate, impermissibly, with respect to occurrences outside the state." *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1207 (2011). Although the UCL reaches claims made by out-of-state residents harmed by unlawful conduct occurring inside of California, it does not apply to wrongful conduct occurring outside of California. *Id.* at 1208-09.

Here, the purported wrongful conduct at issue – the improper meter readings – is alleged to have occurred outside of California. Based on the allegations of the SAC, the crux of Plaintiff's complaint is that NWP billed him at the Chattahoochee Landing Apartments **based on** "inaccurate and inflated meter readings" taken by NWP at or near his property in Georgia. (SAC, ¶¶ 14, 21, 22, 23.) Likewise, Plaintiff alleges that he was injured when he paid the paid the excessive water and sewer bills while in Georgia. (*Id.* at ¶¶ 20, 26.) Accordingly, based on the clear allegations in the amended complaint, Plaintiff lacks standing to sue under the UCL because he concedes that he

was injured when he paid excessive bills sent to him at the Chattahoochee Landing Apartments based on inaccurate meter readings taken by NWP "at or near" his apartment community in Georgia (the alleged wrongful conduct).

In an attempt to resuscitate his UCL claim by creating the appearance of standing, Plaintiff alleges, based on a mischaracterization of the monthly statement language, that NWP sent him and other class members the monthly bills from California. (*Id.* at ¶ 27; Exhibit 1.) Initially, that allegation incorrectly interprets the language from the monthly statement, which simply informs tenants that the bill is coming from NWP, provides NWP's principal mailing address in California, and discloses that NWP is a billing service provider, not a retail public utility. (*See* SAC, Exhibit 1.)

More to the point, Plaintiff's new allegation is a complete red herring. Regardless of what the monthly statement language means and from where the monthly utility statements are mailed, the mailing of bills by NWP to tenants is not the alleged unlawful conduct at issue in this case. Rather, the allegations of the SAC, taken as a whole, make clear that this case is about alleged excessive water and sewer charges that stemmed from purported inaccurate and inflated meter readings at apartment communities. (*Id.* at ¶¶ 14, 22, 23.) For Plaintiff, that alleged wrongful conduct occurred in Georgia. Accordingly, Plaintiff lacks standing under the UCL.

### B. Plaintiff Fails to Allege an "Unfair" Business Practice

Plaintiff's claim for "unfair" business practices against NWP fails because Plaintiff identifies no legislatively-declared public policy that NWP violated. In particular, Plaintiff has not pled facts sufficient to state an "unfair" business practice claim under the *Cel-Tech* test. Specifically, in *Cel-Tech*, the California Supreme Court held that an "unfair" practice claim cannot be based on vague notions of general "unfairness," but instead must be "tethered to some legislatively declared policy or proof of some actual or threatened impact on competition." *See Cel-Tech Communications v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163, 186-87

(1999). *Cel-Tech* was a competitor case. Subsequent appellate decisions have applied a modified version of the *Cel-Tech* standard to consumer claims, such as the instant case. Under this standard, UCL consumer claims for unfairness based on public policy "must be 'tethered' to specific constitutional, statutory or regulatory provisions." See *Scripps Clinic v. Superior Court* (2003) 108 Cal.App.4th 917, 940.

This modified test removes the "proof of some actual or threatened impact on competition" prong that only applies in the context of competitor cases. In consumer cases such as this lawsuit, Plaintiff must plead specific facts to demonstrate a connection between the allegedly "unfair" conduct and an applicable statutory standard or legislatively declared policy. *Scripps Clinic*, 108 Cal.App.4th at 937-941; *see also Gregory v. Albertson's, Inc.*, 104 Cal.App.4th 845, 854 (2002) ("[W]here a claim of an unfair act or practice is predicated on public policy, we read *Cel-Tech* to require that the public policy which is a predicate to the action must be "tethered" to specific constitutional, statutory or regulatory provisions.").

Here, Plaintiff incorrectly relies on Public Utilities Code section 451. As the plain language of the statute indicates, Section 451 applies to public utilities, not a third party billing service provider like NWP. As such, Plaintiff alleges **no applicable** statute or legislatively-declared public policy that NWP violated. Instead, Plaintiff merely concludes that "Defendant's conduct, as alleged herein, constitutes unfair business practices under the UCL . . . ." (SAC, ¶ 39.) This bare allegation is not enough to plead an unfair business practices claim, much less satisfy the heightened pleading requirement under Rule 9(b) of Federal Rules of Civil Procedure. See *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (Rule 9(b)'s particularity requirement applies to the UCL); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1102-05 (9th Cir. 2003). Accordingly, Plaintiff has not alleged an unfair business practices claim against NWP.

///

///

### C. Plaintiff Fails to Allege an "Unlawful" Business Practice

To establish an "unlawful" business practice under the UCL, plaintiff must show that the practice violates another law. *Cel-Tech Communications, Inc.*, 20 Cal.4th at 180; *Cisneros v. U.D. Registry, Inc.*, 39 Cal.App.4th 548, 563 (1995). Thus, to state a claim for an "unlawful" business practice under the UCL, a plaintiff must properly allege that the defendant violated some law independent of the UCL. *See South Bay Chevrolet v. General Motors Acceptance Corp.*, 72 Cal.App.4th 861, 884 (1999).

Here, Plaintiff fails to allege the required predicate violation of law against NWP for an unlawful business practices claim. As discussed above, the only underlying statute alleged by Plaintiff, Public Utilities Code section 451, does not apply to NWP. And even then, Plaintiff relies on Section 451 in a strained attempt to invoke the spirit of public policy, not because NWP is alleged to have violated the statute. (*See* SAC, ¶¶ 40, 42.) In particular, Plaintiff alleges, NWP's "unlawful conduct under the UCL includes conduct that is violative of public policy." (*Id.* at ¶ 40.) Accordingly, because there are no allegations or claims that NWP violated any applicable underlying statute or regulation (aside from the UCL), Plaintiff's unlawful business practices claim fails to state a cause of action.

### V. **CONCLUSION**

For the foregoing reasons, the Court should dismiss Plaintiff's Second Amended Complaint in its entirety.

DATED: February 17, 2015

McKENNA LONG & ALDRIDGE LLP

By: _____
Jaikaran Singh
Attorneys for Defendant
NWP Services Corporation

USW 804917877.1

8
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS