UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL JUNOD, an individual, on behalf of himself and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NWP SERVICES COMPANY, a California corporation, and DOES 1 through 50,<br><br>Defendants. | CASE NO. 8:14-cv-1734-JLS (JCGx)<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION (Doc. 44)** |

Before the Court is Plaintiff Michael Junod's Motion for Class Certification. (Mot., Doc. 44.) Defendant NWP Services Corporation opposed, and Plaintiff replied. (Opp., Doc. 49; Reply, Doc. 50.) Having read and considered the parties' briefs, heard oral argument, and taken the matter under submission, the Court DENIES Plaintiff's Motion for Class Certification.

## I. BACKGROUND

The Second Amended Complaint alleges the following facts:

Defendant NWP Services Corporation provides billing services to public utility companies. (SAC ¶ 3, Doc. 23.) Plaintiff Michael Junod was a resident of an apartment complex that used Defendant's billing services to collect monthly water and sewer charges from its residents. (*Id.* ¶ 2.) Third-party billing servicers like NWP typically maintain and read water meters that are located at or near the customer's location. (*Id.* ¶ 14.) To determine how much water the customer has used, the servicer calculates the difference between the current and prior month's meter reading. (*Id.*) Using the above calculation, the servicer charges the customer for each gallon of water used at a specific rate per unit. (*Id.* ¶ 15.) NWP also charges for sewer usage based on the customer's water consumption. (*Id.* ¶ 16.)

For multi-unit complexes, utility billing servicers often use an allocation method called Ratio Utility Billing System. (*Id.* ¶ 17.) After determining the water and sewage charges for the entire complex, the servicer applies any subsidies provided by the complex for common area expenses before apportioning the remaining charges among the residents. (*Id.*) The billing servicer will issue a monthly bill to each resident that reflects the resident's individual share of water and sewer services in the prior month, including any common area expenses apportioned to each resident. (*Id.* ¶ 18.)

Junod alleges that NWP knowingly and willfully conducted fraudulent billing practices against its customers by (1) overcharging for water and sewer use and

(2) charging for water and sewer services not delivered. (*Id.* ¶ 4.) NWP allegedly provided inaccurate and inflated meter readings that reported higher-than-actual water use. (*Id.* ¶ 23.) Defendant also used water and sewer charges that were up to ten times more than comparable rates in the relevant area. (*Id.* ¶ 24.) In cases where NWP was dismissed and replaced by another billing service provider, bills were issued at rates as low as one-tenth the rate used by NWP. (*Id.* ¶ 25.)

On September 24, 2014, Junod filed a class action complaint against NWP in state court. (Compl., Doc. 1-1.) On October 29, 2014, NWP removed the instant action to this Court. (Notice of Removal, Doc. 1.) Junod filed a First Amended Complaint on November 26, 2014 that alleged the following claims: (1) unfair competition, Cal. Bus. & Prof. Code § 17200 *et seq.*, and (2) unjust enrichment. (FAC ¶¶ 36-46, Doc. 11.) On January 13, 2015, this Court dismissed the UCL claim without prejudice and dismissed the unjust enrichment claim with prejudice. (Doc. 22.) On January 30, 2015, Junod filed a Second Amended Complaint that alleges only a UCL claim against NWP. (SAC ¶¶ 37-43.)

Junod now moves to certify the following two classes pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3):

1. All persons to whom NWP sends invoices for utility services in the U.S. who have a water submeter in their unit (for the purposes of this Order, the "Inflated Billing Class"); and
2. All persons to whom NWP sends invoices for utility services in the U.S. who have a water submeter in their unit that only measure hot water usage (for the purposes of this Order, the "Hot Water Submeter Class").

(Mem. at 1, Doc. 44.)

## II. LEGAL STANDARD

As the Supreme Court recently reaffirmed, "[t]he class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550 (2011). "To obtain class certification, a class plaintiff has the burden of showing that the requirements of Rule 23(a) are met and that the class is maintainable pursuant to Rule 23(b)." *Narouz v. Charter Commc'ns, LLC*, 591 F.3d 1261, 1266 (9th Cir. 2010). "Rule 23(a) ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate." *Dukes*, 131 S. Ct. at 2550. Under Rule 23(a), the party seeking certification must demonstrate:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). "Second, the proposed class must satisfy at least one of the three requirements listed in Rule 23(b)." *Dukes*, 131 S. Ct. at 2548. Here, Plaintiffs seek certification of the class under Rule 23(b)(3), which permits maintenance of a class action if:

> the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Fed. R. Civ. P. 23(b)(3). When examining a class that seeks to be certified under Rule 23(b)(3), the Court may consider:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. R. 23(b)(3). "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Dukes*, 131 S. Ct. at 2551. This requires a district court to conduct a "rigorous analysis" that frequently "will entail some overlap with the merits of the plaintiff's underlying claim." *Id.*

## III. DISCUSSION

### A. Inflated Billing Class

Junod moves to certify a class based on a theory of inaccurate and inflated billing practices. Specifically, Junod asserts that the submeters used by NWP "either inaccurately transmit usage data, or NWP itself inflates such usage." (Mem. at 3-4.) For the reasons set forth below, the Court finds that Junod fails to meet the commonality requirement of Rule 23(a) for the Inflated Billing Class. As a result, the Court need not address the other requirements of Rules 23(a) and 23(b)(3).

#### 1. Commonality

Rule 23(a)(2) requires that "there [be] questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Dukes*, 131 S. Ct. at 2551 (quoting *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). The plaintiff must allege that the class' injuries "depend upon a common contention" that is "capable of classwide resolution." *Id.* In other words, the "determination of [the common contention's] truth or falsity [must] resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* "What matters to class certification . . . is not the raising of common questions – even in droves – but, rather, the capacity of a classwide proceeding to generate

common *answers* apt to drive the resolution of the litigation." *Id.* (internal quotation marks and citation omitted). Junod argues that commonality is met because his claim "for inflated billing based on inaccurate submeter readings invokes identical questions of fact and law." (Mem. at 6.) To demonstrate that NWP uniformly inflates its bills, Junod relies on his own experience as well as two anonymous complaints printed from the website http://nwp-services-corporation.pissedconsumer.com. (Mem. at 3; Plesset Decl. ¶ 5, Doc. 44-1.)[1]

The Court first addresses the two anonymous complaints. Junod acknowledges he did not verify the accuracy of these complaints before relying on them as evidence. (Junod Depo. at 29:21-31:2, Singh Decl. Ex. 1, Doc. 49-3.) Moreover, because these complaints are offered for the truth of the matter asserted therein, they constitute inadmissible hearsay. Certain courts in this circuit have applied a relaxed evidentiary standard at the class certification stage to "consider evidence that may not be admissible at trial." *See, e.g., Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 599 (C.D. Cal. 2008). However, although "Plaintiff is not obligated to [strictly] comply with the Federal Rules of Evidence" when moving for class certification, the Court observes that the two anonymous complaints offered by the Plaintiff "lack *any* indicia of reliability." *See Charlebois v. Angels Baseball, LP*, No. SACV 10-0853-DOC (ANx), 2011 WL 2610122, at *8 (C.D. Cal. June 30, 2011) (emphasis added) (declining to consider "unreliable, hearsay-based declarations" on a motion for class certification). Anonymous content from an unauthenticated website is "extremely unreliable" given that a website often "lacks the capacity to prevent individuals from making multiple entries." *Madanat v. First Data Corp.*, 282 F.R.D. 304, 311 (E.D.N.Y. 2012). "Therefore, plaintiff or any other individual could literally log hundreds of complaints under the guise of different users." *Id.* Here,

---

[1] Exhibit 4 to Plesset's declaration also includes numerous one-sentence complaints and photographs that do not address NWP's billing practices and appear irrelevant to Junod's claims. (*See* Plesset Decl. Ex. 4.) In his motion, Junod relies on only the above two reviews as to NWP bills made by anonymous users. (Mem. at 3, 4-5.)

because there is no way of verifying the accuracy or source of these complaints, there is no way of determining whether the anonymous complaints are, in fact, relevant to the class claims. As in *Charlebois* and *Madanat*, this Court does not find it appropriate to certify a class based on such unreliable, hearsay-based evidence. Accordingly, the Court declines to consider the two anonymous complaints when addressing the instant motion for class certification.

Without the two anonymous complaints, Junod is left with nothing but his own anecdotal declaration. When considering a motion for class certification, district courts cannot "weigh the evidence or otherwise evaluate the *merits* of a plaintiff's class claim," but they may evaluate the plaintiff's evidence to determine whether it "*support[s] a class-wide* finding regarding [Rule 23] certification." *See Marlo v. UPS, Inc.*, 639 F.3d 942, 949 (9th Cir. 2011) (emphasis added) (internal quotation marks omitted) (affirming the district court's determination that the plaintiff's declarations and deposition testimony "did not support a class-wide determination."). NWP asserts that during the putative class period, it has provided utility billing services to approximately 3,597 apartment communities that use submeters to measure their tenant's water and sewer usage. (Behr Decl. ¶ 10, Doc. 49-1.) However, to support his theory for class certification, Junod is left with only his own individual experience as to inflated utility bills. "[U]nder *Dukes*, for anecdotal evidence to give rise to an inference of a common practice, the evidence should be representative in number and in geography." *Pedroza v. PetSmart, Inc.*, No. EDCV 11-298-GHK (DTBx), 2013 WL 1490667, at *8 (C.D. Cal. Jan. 28, 2013) (citing *Dukes*, 131 S. Ct. at 2556). The *Dukes* court found that 120 affidavits were "too weak to raise any inference" of a discriminatory practice where they represented only 1/12,500 of the putative class and related to only 235 of Wal-Mart's 3,400 stores. *Dukes*, 131 S. Ct. at 2556. Clearly, one anecdotal declaration is too weak to raise any inference of a uniform policy or practice of inflationary billing.

Junod provides no other evidence to support commonality as to this proposed class.[2] This Court's initial standing order advised counsel "to begin to conduct discovery actively before the Scheduling Conference," (Doc. 8 at 5), and given that the Court issued its scheduling order on February 11, 2015, (Doc. 27), discovery should have been ongoing in this action since *at least* February 2015. Junod's failure to identify any evidence supporting a classwide issue is fatal to his motion to certify. Junod appears to rely on a general theory that his claim will focus on uniform practices (*see* Reply at 1), but unsupported theories are insufficient to support class certification without an adequate degree of identifiable *common proof* that will generate common answers as to liability. Accordingly, Junod fails to satisfy the commonality requirement of Rule 23(a).

Because Junod fails to satisfy the commonality requirement of Rule 23(a), the proposed Inflated Billing Class is not suitable for class treatment. The motion to certify this putative class is therefore DENIED.

B. **Hot Water Submeter Class**

Junod also moves to certify a second putative class based on two theories of liability. (Mem. at 4-5.) First, Junod asserts that in older complexes, water pipes split into a hot water pipe and a cold water pipe. (*Id*. at 4.) In these older complexes, NWP allegedly installs submeters on hot water rather than cold water pipes. (*Id*.) Junod asserts that by capturing only hot water usage, NWP uniformly relies on inaccurate water usage data when calculating and issuing bills. (*Id*.) Second, Junod identifies NWP's practice of calculating sewage usage by measuring only water usage. (*Id*.) Junod posits that at least some of the water entering a given unit is consumed or used and does not leave the unit as sewage. (*Id*.) Thus, Junod argues that by (1) submetering only the hot water usage and

---

[2] In reply, Junod also argues that "NWP has a common approach for measuring water usage that would apply to all class-members whose water usage was measured by hot water." (Reply at 1, 5.) However, because this argument applies to the Hot Water Submeter Class rather than the Inflated Billing Class, the Court does not address the argument here.

8

1  (2) assuming the amount of hot water entering a given unit is the same amount of water
2  leaving the unit, NWP inaccurately allocates expenses for sewer usage. (*Id*. at 5.) Junod
3  seeks to certify a nationwide class under the California UCL.[3] For the following reasons,
4  this proposed class is not suitable for class treatment.

### 1. <u>Failure to Allege the Underlying Theories</u>

The Court first addresses NWP's assertion that Junod failed to adequately allege the underlying theories of this proposed class. In its opposition brief, NWP notes that Junod's "arguments that charging water and sewer use based on metered allocation of hot water usage" were "not alleged in his operative complaint." (Opp. at 16 n.3.) Junod fails to address this observation in his reply brief.

Where the claim or theory underlying a proposed class is absent from the operative complaint, class certification is generally improper. "Class certification is not a time for asserting new legal theories that were not pleaded in the complaint." *Brown v. Am. Airlines, Inc.*, 285 F.R.D. 546, 560 (C.D. Cal. 2011). The operative complaint must provide "adequate notice of the claims that underly [sic] the motion to certify [the proposed class]," and the mere "fact that the FAC references particular code sections . . . is not enough to support a motion for class certification." *See York v. Starbucks Corp.*, No. CV 08-07919 GAF PJWX, 2011 WL 8199987, at *10 (C.D. Cal. Nov. 23, 2011). Thus, where proposed classes "seek[] recovery on the basis of a theory not found in the operative complaint," courts generally decline to certify the class. *See id.*; *see also Ortiz v. CVS Caremark Corp.*, No. C-12-05859 EDL, 2013 WL 6236743, at *11 (N.D. Cal. Dec. 2,

---

[3] Throughout his motion, Junod also references claims for unjust enrichment and breach of contract. (*See* Mem. at 1, 10, 11.) Junod pleaded these claims in his original complaint, (Compl., Doc. 1-1), but when he filed his First Amended Complaint, Junod pleaded only a UCL claim and an unjust enrichment claim, (FAC, Doc. 11.) On January 13, 2015, the Court dismissed the unjust enrichment claim with prejudice, (Doc. 22), and the operative complaint alleges only one claim under the UCL, (SAC). Accordingly, the Court addresses only the UCL claim.

1  2013) (denying class certification because the operative complaint did not set forth the
2  claim underlying the proposed subclass); *Bibo v. Fed. Express, Inc.*, No. C 07-2505 TEH,
3  2009 WL 1068880, at *7 (N.D. Cal. Apr. 21, 2009) (same); *Munoz v. Giumarra Vineyards*
4  *Corp.*, No. 1:09-CV-00703-AWI, 2012 WL 2617553, at *17 (E.D. Cal. July 5, 2012)
5  (same), *report and recommendation adopted,* No. CIV-F-09-0703 AWI, 2013 WL
6  2421599 (E.D. Cal. June 3, 2013).
7   A thorough review of the SAC indicates that the legal theory underlying this
8  proposed class is not asserted in the operative complaint.  Nowhere in the SAC does Junod
9  allege that NWP unlawfully submeters only hot water usage, that NWP unlawfully charges
10 sewage use by measuring only water usage, or that NWP unlawfully charges sewage use
11 by measuring only hot water usage.  The FAC, Complaint, and the parties' Joint Rule 26(f)
12 Report similarly fail to allege the above assertions.  (*See* FAC; Compl.; Joint Rule 26(f)
13 Report, Doc. 26.)  Because the proposed class "seeks . . . recovery on the basis of a theory
14 not found in the operative complaint," class certification would be improper.  *See York*,
15 2011 WL 8199987, at *10.  Accordingly, the Court DENIES certification of the Hot Water
16 Submeter Class on this basis.
17
18      **2.     Ascertainability**
19   Lack of ascertainability provides an additional basis for the Court's denial of class
20 certification.  "Parties seeking class certification must, as 'a threshold matter, and apart
21 from the explicit requirements of Rule 23(a),' show an 'identifiable and ascertainable class
22 exists.'"  *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 308 F.R.D. 606, 612 (N.D. Cal.
23 2015) (quoting *Mazur v. eBay Inc.*, 257 F.R.D. 563, 567 (N.D. Cal. 2009)).  Where a class
24 as defined would include unharmed individuals, "the class definition is both imprecise and
25 overbroad."  *Mazur*, 257 F.R.D. at 567.
26   Here, the class is defined as: "All persons to whom NWP sends invoices for utility
27 services in the U.S. who have a water submeter in their unit that only measures hot water
28

usage." (Mem. at 1.) However, this definition naturally includes members who were unharmed by NWP's alleged misconduct. Junod himself acknowledges this issue by using the following example in his Motion:

> Say Apartment A uses 10 gallons of hot water in a month and 50 gallons of cold water in a month. Next door, Apartment B uses 50 gallons of hot water in a month and 10 gallons of cold water. Although the two apartments used an identical amount of water in that month, Apartment A will be charged for 10 gallons of usage (its hot water usage) and Apartment B will be charged for 50 gallons of usage (its hot water usage).

(*Id*. at 4.) Notably, Junod asserts that NWP uses the hot water submeters to calculate the *distribution* of utility costs among residents; the submeters do not affect the total utility bill for any given apartment complex. (*Id*. at 2.) In the above example, Junod acknowledges that tenants who predominantly use hot water ("hot water users") are, in a sense, subsidizing the utility costs for tenants who predominantly use cold water ("cold water users"). Cold water users, who ultimately pay less than their share of total water usage, benefit from this distribution formula. Thus, only hot water users are harmed by NWP's alleged conduct. However, the above class definition includes both harmed hot water users and unharmed – indeed, benefitted − cold water users.

Courts in this circuit have consistently denied certification where class definitions include both harmed and unharmed members. *See Mazur*, 257 F.R.D. at 567 (denying certification in part because the class definition included non-harmed individuals); *Dioquino v. Sempris, LLC*, No. CV 11-05556 SJO (MRWx), 2012 WL 6742528, at *5 (C.D. Cal. Apr. 9, 2012) (same); *Colapinto v. Esquire Deposition Servs., LLC*, Nos. CV 09-07584 SJO (PLAx), SACV 10-00297 SJO (PLAx), 2011 WL 913251, at *4 (C.D. Cal. Mar. 8, 2011) (same); *Gonzales v. Comcast Corp.*, No. 10-cv-01010-LJO-BAM, 2012 WL 10621, at *20 (E.D. Cal. Jan. 3, 2012) (same). Because the class definition includes

unharmed members, it is imprecise and overbroad. Accordingly, the Court DENIES certification of the Hot Water Subclass on this additional basis.

### C. Predominance as to Both Classes

Finally, the Court finds that Junod fails to satisfy the predominance requirement of Rule 23(b)(3) as to both proposed classes. The Supreme Court has explained that Rule 23(b)(3) "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). "Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) (quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1778 (2d ed.1986)).

Junod seeks to certify nationwide classes under the California UCL. NWP argues the UCL may not be applied to either nationwide class and the resulting variances in state law preclude a finding of predominance. (Opp. at 18-23.) NWP also notes that in California, it does not use hot-water-only submeters to calculate water and sewer charges because such submeters are not certifiable by the California Department of Weights and Measures. (*Id*. at 17; Behr Decl. ¶ 17.) At the hearing, NWP emphasized that if the Hot Water Submeter Class were certified, the UCL would apply to a nationwide class that does not include *any* California members.

To determine whether the Court may apply the UCL to a nationwide class in this action, the Court must analyze California's choice of law rules. *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1187 (9th Cir. 2001) ("A federal court sitting in diversity must

1  look to the forum state's choice of law rules to determine the controlling substantive
2  law."); *In re Yahoo Mail Litig.*, 308 F.R.D. 577, 602 (N.D. Cal. 2015) ("In a CAFA
3  diversity action, this Court applies California's choice of law rules."). "Under California's
4  choice of law rules, the class action proponent bears the initial burden to show that
5  California has 'significant contact or significant aggregation of contacts' to the claims of
6  each class member." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012)
7  (quoting *Wash. Mut. Bank v. Superior Court*, 24 Cal. 4th 906, 921 (2001)). "Such a
8  showing is necessary to ensure that application of California law is constitutional." *Id*. at
9  589-90 (citing *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 310-11 (1981)). "Once the class
10 action proponent makes this showing, the burden shifts to the other side to demonstrate
11 'that foreign law, rather than California law, should apply to class claims." *Id*. (quoting
12 *Wash. Mut. Bank*, 24 Cal. 4th at 921).

13       First, Junod satisfies his burden of demonstrating that California has a
14 constitutionally sufficient aggregation of contacts to the class claim. Junod asserts that
15 NWP's principal place of business is in California and the bills that allegedly overcharge
16 for water and sewer services are calculated at, and sent from, its California facility. (Reply
17 at 3.) Courts consistently find such contacts sufficient to satisfy this initial burden. *See*
18 *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 242 (2001) (initial burden
19 satisfied where the defendant's principal place of business is in California and the
20 representation at issue was prepared in and distributed from California); *In re Yahoo Mail*
21 *Litig.*, 308 F.R.D. at 602 (same); *Chavez v. Blue Sky Natural Bev. Co.*, 268 F.R.D. 365,
22 379 (N.D. Cal. 2010) (same).

23       The burden then shifts to the nonmoving party to demonstrate that "foreign law,
24 rather than California law, should apply to class claims." *Wash. Mut. Bank*, 24 Cal. 4th at
25 921. "California law may only be used on a classwide basis if 'the interests of other states
26 are not found to outweigh California's interest in having its law applied.'" *Id*. "To
27
28

determine whether the interests of other states outweigh California's interest, the court looks to a three-step governmental interest test:

> First, the court determines whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different.
>
> Second, if there is a difference, the court examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists.
>
> Third, if the court finds that there is a true conflict, it carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state, and then ultimately applies the law of the state whose interest would be more impaired if its law were not applied.

*Mazza*, 666 F.3d at 590 (quoting *McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68, 81-82 (2010)).

NWP satisfies the first step of the governmental interest test. "The fact that two or more states are involved does not itself indicate that there is a conflict of law problem." *Id.* (quoting *Wash. Mut. Bank*, 24 Cal. 4th at 919). "A problem only arises if differences in state law are material, that is, if they make a difference in this litigation." *Id*. (citing same at 919-20). NWP exhaustively details the ways in which the UCL differs from the laws of the 44 other jurisdictions in which class members may reside. (Singh Decl. Ex. 7, Doc. 49-6.) The Court notes the differences in scienter and reliance requirements as well as remedies, (*see id*.), which have been deemed material by this Court and the Ninth Circuit. *Mazza*, 666 F.3d at 591; *Gustafson v. BAC Home Loans Serv., LP*, 294 F.R.D. 529, 538-39 (C.D. Cal. 2013). Thus, the Court concludes that material differences exist, and it moves to the second element of the governmental interest test.

"It is a principle of federalism that 'each State may make its own reasoned judgment about what conduct is permitted or proscribed within its borders.'" *Mazza*, 666 F.3d at 591 (quoting *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 422 (2003)). "[E]very state has an interest in having its law applied to its resident claimants,"

1  *id*. at 591-92 (quoting *Zinser*, 253 F.3d at 1187), and California law "recognizes that 'a
2  jurisdiction ordinarily has "the predominant interest" in regulating conduct that occurs
3  within its borders,'" *id*. at 592 (quoting *McCann*, 48 Cal. 4th at 97). The charges and
4  invoices were sent to residents in multiple jurisdictions, and the relevant submeters on
5  which the charges are allegedly based exist on properties located within the foreign states'
6  borders. Moreover, each state issues statutes, rules, or regulations that govern utility
7  billing (*see* Opp. at 17), and the charges and submetering methodology at issue here
8  implicate these individual state interests. The Court therefore finds that each foreign state
9  has an interest in applying its own consumer protection laws to its class member residents.
10 *Mazza*, 666 F.3d at 591 ("Each state has an interest in setting the appropriate level of
11 liability for companies conducting business within its territory."); *Gianino v. Alacer Corp*.,
12 846 F. Supp. 2d 1096, 1103 (C.D. Cal. 2012) ("[T]hose [other] states have a compelling
13 interest in protecting their consumers from in-state injuries caused by a California
14 corporation doing business within their borders and in delineating the scope of recovery
15 for the consumers under their own laws."). Thus, the Court finds that NWP satisfies the
16 second element of this test.
17      The Court therefore turns to the third and final step of the governmental interest
18 test. Under this step, the Court must consider which state's "interest would be more
19 impaired if its law were not applied." *Mazza*, 666 F.3d at 590. "California recognizes that
20 'with respect to regulating or affecting conduct within its borders, the place of the wrong
21 has the predominant interest.'" *Id*. (citing *Hernandez v. Burger*, 102 Cal. App. 3d 795, 802
22 (1980)). "California considers 'the place of the wrong' to be the state where the last event
23 necessary to make the actor liable occurred." *Id*. (quoting *McCann*, 48 Cal. 4th at 94
24 n.12).
25      To the extent a UCL claim is based on misrepresentations, a plaintiff must allege
26 and prove reliance. *See Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1363 (2010)
27 (requiring reliance where a UCL claim is based on "misrepresentation and deception"
28

because "[a] consumer's burden of pleading causation in a UCL action should hinge on the nature of the alleged wrongdoing rather than the specific prong of the UCL the consumer invokes."); *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 326 n.9 (2011) ("[A] plaintiff 'proceeding on a claim of misrepresentation as the basis of his or her UCL action must demonstrate actual reliance on the allegedly deceptive or misleading statements, in accordance with well-settled principles regarding the element of reliance in ordinary fraud actions.'" (quoting *In re Tobacco II Cases*, 46 Cal. 4th 298, 306 (2009))). As confirmed at the hearing, the crux of Junod's UCL claim is that NWP engaged in "fraudulent billing practices" by deceiving class members into overpaying for their water and sewer usage based on deceptive and misrepresented monthly statements. (FAC ¶¶ 3, 4, 21, 41.) Junod argues that the "place of the wrong" is in California, where the unlawful policies were allegedly implemented and the bills were generated for distribution. (Reply at 4.) However, courts have consistently held that in misrepresentation claims, the "place of the wrong" is where the misrepresentations were *communicated to* the plaintiffs, not the state from which the policies or misrepresentation originated. *Mazza*, 666 F.3d at 594 ("[T]he last events necessary for liability as to the foreign class members—communication of the advertisements to the claimants and their reliance thereon in purchasing vehicles—took place in the various foreign states, not in California."); *Zinn v. Ex-Cell-O Corp.*, 148 Cal. App. 2d 56, 80 n.6 (1957) ("No matter where the intention to misrepresent was formed, nor the acts which were misrepresented took place, no wrong was committed until the misrepresentations were communicated to plaintiffs and this took place in Washington.").

Accordingly, the "place of the wrong" in this action is the place to which the bills were sent and relied on by the tenants when they allegedly overpaid their utility charges. In his reply brief, Junod cites to a number of cases that permitted an out-of-state plaintiff to assert a UCL claim where the alleged fraudulent activity emanated from California. (Reply at 4-5 (citing *Ehret v. Uber Techs., Inc.*, No. C-14-0113 EMC, 2014 WL 4640170, at *4 (N.D. Cal. Sept. 17, 2014); *In re Clorox Consumer Litig.*, 894 F. Supp. 2d 1224,

1238 (N.D. Cal. 2012); *Fontenberry v. MV Transp., Inc.*, 984 F. Supp. 2d 1062, 1067 (E.D. Cal. 2013); *In re iPhone 4S Consumer Litig.*, No. C 12-1127 CW, 2013 WL 3829653, at *7 (N.D. Cal. July 23, 2013).) However, these cases address a standing issue at the pleading stage of whether the UCL has extraterritorial application to an out-of-state plaintiff; they do not address the question of which state has a *predominant interest* in the UCL class claim when engaging in California's governmental interest test. Accordingly, these inapposite cases do not alter the Court's conclusion.

Finally, the Court notes that California's interest in applying its law to out-of-state tenants is attenuated in this action. California does "have an interest in 'regulating those who do business within its state boundaries, and foreign companies located there,'" but the Court finds that "foreign states' interests are more directly implicated by the facts of this case, and those interests would be most impaired if the respective foreign states' laws were not applied." *Gustafson*, 294 F.R.D. at 540 (quoting *Mazza*, 666 F.3d at 594). Moreover, as noted above, there are *no* California members of the proposed Hot Water Submeter Class. Thus, as to this class, California lacks any interest in protecting its own residents. In light of the above considerations, "a nationwide class may not be certified under the UCL on the facts of this case." *Id*.

Having found that the law of multiple jurisdictions applies to both classes, the Court concludes that material "variances in state law overwhelm common issues and preclude predominance." *Mazza*, 666 F.3d at 597. Accordingly, the Court DENIES certification of the Inflated Billing Class and the Hot Water Submeter Class on this additional basis.

## IV. CONCLUSION

For the foregoing reasons, the Motion for Class Certification is DENIED.

DATED: July 18, 2016

_____
JOSEPHINE L. STATON
UNITED STATES DISTRICT JUDGE